IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No.  96-31075

Summary Calendar
_____


CYNTHIA POWELL GUIDRY,

                          Plaintiff-Appellant,

     v.

THE PAUL REVERE LIFE INSURANCE COMPANY,

                          Defendant-Appellee.

_____

Appeal from the United States District Court
for the Western District of Louisiana
(95-CV-1579)
_____
June 26, 1997
Before KING, JOLLY, and DENNIS, Circuit Judges.

PER CURIAM:[*]

     Cynthia Powell Guidry brought this lawsuit against The Paul
Revere Life Insurance Company ("Paul Revere") to recover benefits
under a disability income insurance policy, penalties, and
attorney's fees.  Guidry appeals the district court's dismissal
of her claims following a jury verdict in favor of Paul Revere.
We affirm.

_____

     [*]Pursuant to 5th Cir. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5th Cir. R. 47.5.4.

## I.   FACTS AND PROCEDURAL HISTORY

In October of 1993, Guidry bought a disability income insurance policy from Paul Revere.  Prior to obtaining the policy, Guidry was required to fill out an application which included questions about her medical history.  Guidry's application was completed at her residence by Carla Wormser, an agent acting for Paul Revere.  Wormser read the questions out loud and filled out the application based on Guidry's responses. Two questions on the application are important to this case. First, question 6(c) asks "[h]ave you **ever** been treated for or had any known indication of . . . [d]isease or disorder of the stomach or intestines, liver, thyroid, bones, muscles, joints, back or neck?" (emphasis in original).  This question is answered "no."  Next, question 7 asks "[i]n the past **5 years** have you had any medical advice or operation, physical exam, treatment, illness, abnormality or injury not listed above?" (emphasis in original).  This question is answered "yes."  The question continues, "[a]re you currently receiving any medical advice or treatment?"  This question is also answered "yes."

If the applicant answers "yes" to any questions pertaining to medical condition, question 9 then asks for detailed explanations including exact diagnoses, dates, duration, physicians and addresses.  Guidry's application contains detailed information concerning 1) fibroids, endometriosis, and a total

2

hysterectomy, 2) fibrosistic disease of the left breast, 3) surgery for a deviated septum, 4) flu and sinus infection, and 5) hormone replacement. After Wormser completed the application, Guidry was asked to read and sign the application. Guidry also signed an authorization for the release of medical information.

Guidry contends that, in filling out the application, she told Wormser about an incident she had in 1989 when she twisted her low back, discussed several incidents or episodes when she suffered from low back pain, and told her that surgery was contemplated at one time. Guidry further asserts that after she revealed that she had not had surgery and had been working for the past three and one-half years without any back trouble, Wormser indicated that she was not going to check "yes" in answer to question 6(c). Wormser, on the other hand, testified that in answer to question 6(c), Guidry said "no" and Wormser recorded Guidry's response by placing an "x" in the appropriate box on the application.

Upon accepting the application, Paul Revere issued a policy dated October 11, 1993, which provided for monthly disability benefits in the amount of two thousand dollars. The policy excluded coverage for a pre-existing condition not disclosed on the application.

On November 29, 1994, Guidry suffered a back injury during a work-related emergency preparedness drill. After an unsuccessful attempt to return to work one week later, Guidry sought medical

3

attention.  As of the time of trial, Guidry has still been unable to return to work.

In January of 1995, Guidry submitted a claim for disability benefits to Paul Revere.  On the section of the claim form requesting information about similar injuries, Guidry indicated that she had a similar injury in September of 1989.  She reported that she had a "bulging L4-5 disc" and that she had been treated by Dr. Charles Olivier and Dr. Stephen Goldware.

Diane Kacevich, an associate claim consultant for Paul Revere, was responsible for handling Guidry's claim.  Kacevich obtained and reviewed medical treatment records from Dr. Olivier and Dr. Goldware which revealed a medical history including the following incidents.  Guidry suffered her first back injury while diving into a pool when she was approximately twelve years old.  Her next back injury occurred in 1979 when she was involved in a motor vehicle accident.  In September of 1989 she injured her low back while attempting to remove a bicycle from a rack in her garage.  Finally, in 1990, Guidry pulled her back helping her husband out of bed.  As a result of these incidents, Guidry saw various doctors, underwent numerous tests and treatments, and took prescription medication.  Additionally, surgery was discussed during some of Guidry's doctor visits.  All of these incidents occurred prior to October of 1993, yet they were not disclosed on Guidry's disability insurance application.  After

4

further investigation by Paul Revere, Guidry's claim was denied in April of 1995.

On August 3, 1995, Guidry filed suit in Louisiana state court seeking to recover disability benefits, penalties, and attorney's fees from Paul Revere. The matter was removed to federal court based on diversity jurisdiction. Following a three-day trial, the jury returned special interrogatories representing a verdict in favor of Paul Revere. Judgment in accordance with the jury's verdict was entered into the record on September 16, 1996. Guidry timely appealed.

On appeal, Guidry asserts the following: 1) no substantial evidence existed to support the jury's findings in favor of Paul Revere, and 2) the district court erred in changing its ruling on the last day of trial to allow Paul Revere to assert its defense of pre-existing condition.

## II. SUFFICIENCY OF THE EVIDENCE

### A. Standard of Review

In reviewing for sufficiency of the evidence, the findings of the jury are given great deference. "Where a question has been submitted to a jury, the evidence is sufficient to support the jury's finding if -- taking all evidence and all reasonable inferences that can be drawn from that evidence in favor of the finding -- a reasonable person could have made such a finding."

5

<u>Atchison, Topeka & Santa Fe Ry. v. Sherwin-Williams Co.</u>, 963 F.2d 746, 749 (5th Cir. 1992).

## B. Discussion

Paul Revere asserts that Guidry's claim for benefits was denied because she made a material misrepresentation with the intent to deceive in applying for her policy and, thus, they have no liability to her under the policy. Louisiana Revised Statute § 22:619 sets forth the burden that Paul Revere must carry in order to prove this affirmative defense.

> In any application for life or health and accident insurance made in writing by the insured, all statements therein made by the insured shall, in the absence of fraud, be deemed representations and not warranties. The falsity of any such statement shall not bar the right to recovery under the contract unless such false statement was made with actual intent to deceive or unless it materially affected either the acceptance of the risk or the hazard assumed by the insurer.

LA. REV. STAT. ANN. § 22:619(B) (West 1995). The jurisprudence interpreting this statute places the burden on the insurer to prove that 1) the applicant's statement was false, 2) the false statement was made with the intent to deceive, and 3) the false statement materially affected the acceptance of the risk by the insurer or the hazard assumed. <u>Wohlman v. Paul Revere Life Ins. Co.</u>, 980 F.2d 283, 285 (5th Cir. 1992).

The jury found from a preponderance of the evidence that Guidry knowingly made a false statement by failing to disclose

6

information in her application.  Guidry admitted at trial that prior to the date of her application she had a medical history of incidents involving her back and/or neck, she had seen numerous doctors, she had an extensive record of treatment, she was prescribed various medications, and she had periods of disability from working due to back pain.

The jury found from a preponderance of the evidence that Guidry made a material misrepresentation on her application with the intent to deceive Paul Revere.  Courts allow the insurer to satisfy the burden of proving intent to deceive by showing "facts and circumstances surrounding the application process indicating the insured's knowledge of the falsity of the representations made in the application and his recognition of the materiality of his misrepresentations or from circumstances which create a reasonable assumption that the insured recognized the materiality."  Wohlman, 980 F.2d at 286.  Guidry admitted at trial that she knew the information provided about her medical history was important to Paul Revere and would provide the basis for the policy issued.  Guidry also signed the application which served as an affirmation that she read the statements and answers provided in the application and that they were complete and correctly recorded.  Additionally, Paul Revere brings forth impeachment evidence to support the jury's finding of intent to deceive.  Guidry testified that in 1989 or 1990 Dr. Olivier told her that she would not be able to work for six to twelve months

7

if she had a lumbar fusion for her back.  Guidry was then asked if upon being told this her immediate thought was "what if I have to end up having a fusion and I'm out of work for a year?  How am I going to afford to pay my bills?"  Guidry denied that this was her concern.  Guidry then read her deposition which reflected that this had been her reaction.

The jury found from a preponderance of the evidence that Guidry's material misrepresentation affected the risk assumed by Paul Revere.  "The test of materiality involves considering whether knowledge of the facts would have influenced the insurer in determining whether to assume the risk or in fixing the applicable premium."  Wohlman, 980 F.2d at 286.  Paul Peter, the director of individual underwriting for Paul Revere, testified that based on medical underwriting guidelines, if Paul Revere had known of Guidry's back history, it would have issued her disability insurance policy with a full exclusion rider for the low back.  Such a policy would not have provided benefits to Guidry had she sustained an injury or an accident to the low back.  Peter described the omitted information regarding Guidry's back history as "very important."

Despite this evidence, Guidry contends that no substantial evidence existed to support the jury's finding that she made a material misrepresentation with the intent to deceive Paul Revere.  In support of this contention, she offers circumstantial evidence which she believes shows that the jury's verdict does

8

not reflect the "truth and right of the case."  Guidry asserts that if she wanted to deceive Paul Revere, she would not have signed an authorization for the release of medical information, she would not have disclosed information regarding her other pre-existing conditions on her application, and she would not have informed Paul Revere of her pre-existing low back condition on the claim form.  Also, while Wormser had no specific recollection of going over questions in the application, Guidry did have specific recollections of telling Wormser about her prior back history.

"Even though we might have reached a different conclusion if we had been the trier of fact, we are not free to reweigh the evidence or to re-evaluate credibility of witnesses."  Rideau v. Parkem Indus. Servs., Inc., 917 F.2d 892, 897 (5th Cir. 1990).  Viewing the evidence and all reasonable inferences in the light most favorable to the jury's verdict, we find that the jury had sufficient evidence from which to conclude that Guidry materially misrepresented her true medical condition with the intent to deceive Paul Revere.

Because we agree with the district court that Paul Revere bore the requisite burden of proof under Louisiana Revised Statute § 22:619, we also conclude that the jury had a sufficient evidentiary basis for finding that Paul Revere had just and reasonable grounds for denying Guidry's claim for disability benefits.  Further, because the finding of material

9

misrepresentation with the intent to deceive bars Guidry's recovery under the Paul Revere disability policy, we need not address Guidry's contention that there was no evidence to support a second jury finding barring recovery, that is, that Guidry's disability was caused by a pre-existing condition.

### III. DISTRICT COURT'S CHANGED RULING

Guidry asserts that the district court committed reversible error in changing its ruling on the last day of trial to allow Paul Revere to assert the affirmative defense of pre-existing condition. In pre-trial conference, the district court judge decided that Paul Revere could not assert the affirmative defense of pre-existing condition. On the morning of the final day of trial, however, the district court judge determined that there would be an interrogatory and jury instructions on the pre-existing condition defense. Guidry believes that in order to assert this defense, Paul Revere must meet the requirements of Louisiana Revised Statute § 22:619. The jury instructions, however, did not require that Paul Revere meet the burden set forth by this statute.[1] Guidry asserts that the district court

---

[1]The jury instructions regarding the pre-existing condition defense stated:

> [t]he burden of proof is on the insurer to prove, by a preponderance of the evidence, that plaintiff's disability resulted from an undisclosed pre-existing condition as defined in the policy. Thus, it is Paul Revere's burden to prove the pre-existing condition was not disclosed by plaintiff to defendant and to prove the plaintiff's disability resulted from a physical

10

not only erred in its interpretation of the applicable law for the pre-existing condition defense, but also violated the law of the case doctrine in changing its ruling on the last day of trial thereby preventing Guidry from addressing all the issues presented at the trial in opening statements and the case in chief. Guidry further asserts that this must have confused the jury and caused Guidry's counsel to lose credibility.

The law of the case doctrine states that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case. Copeland v. Merrill Lynch & Co., 47 F.3d 1415, 1423 (5th Cir. 1995). This doctrine is a discretionary rule of practice which does not limit the power of the court to revisit a legal issue. Id. at 1424.

While the jury did find that Guidry's disability was caused by a pre-existing condition as defined by the policy, they also found the elements necessary to establish the defense of material misrepresentation with the intent to deceive. These elements fulfill the requirements of Louisiana Revised Statute § 22:619, which is what Guidry urges is necessary to uphold a pre-existing condition defense.

---

condition for which, prior to the date of issue of the policy, symptoms existed that would have caused an ordinarily prudent person to seek diagnosis, care, or treatment or for which medical advice or treatment was recommended by or received from a physician.

11

Even if the jury instructions were erroneous, we will not reverse if we determine that the challenged instruction could not have affected the outcome of the case.  FDIC v. Mijalis, 15 F.3d 1314, 1318 (5th Cir. 1994).  The jury's finding relating to the pre-existing condition defense is irrelevant in light of the jury's answers to the previous interrogatories establishing material misrepresentation with the intent to deceive thus relieving Paul Revere of liability for Guidry's claim for disability benefits.

Assuming without deciding that the district court committed error in allowing the pre-existing condition defense, it was harmless error within the meaning of FED. R. CIV. P. 61.[2]  Nothing in the record indicates jury confusion or the loss of credibility of Guidry's counsel as a result of the district court's decision to allow the additional defense on the third day of trial.  The district court's decision to allow the defense of pre-existing

---

[2]Rule 61 provides:

> No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice.  The court at every stage of the proceeding must disregard any error of defect in the proceeding which does not affect the substantial rights of the parties.

12

condition did not affect the outcome of the case and was therefore harmless.

## IV.   CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.